**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MATTHEW T. MOYER,** | : | |
| **Plaintiff** | : | **No. 1:26-cv-00384** |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| **TITLE GUARANTY OF HAWAII, LLC** | : | |
| **a/k/a TITLE GUARANTY OF HAWAII,** | : | |
| **INCORPORATED and TITLE** | : | |
| **GUARANTY ESCROW SERVICES, INC.,** | : | |
| **Defendants** | : | |

**MEMORANDUM**

Before the Court is a motion seeking dismissal of Plaintiff Matthew T. Moyer ("Plaintiff")'s amended complaint (Doc. No. 7) pursuant to Federal Rule of Civil Procedure 12(b)(2), 12(b)(3), 12(b)(6), and 12(b)(7), filed by Defendants Title Guaranty of Hawaii, LLC a/k/a Title Guaranty of Hawaii, Incorporated ("Title Guaranty"), and Title Guaranty Escrow Services, Inc. ("TGES") (collectively, "Defendants") (Doc. No. 9). For the following reasons, the Court will grant the motion in part and deny it in part.

## I. BACKGROUND[1]

In March 2025, Plaintiff met Brian Anderson, an individual who, as a member of Ho'omalu LLC, sought investors for a real estate development project known as Ainamalu (the "Ainamalu Project"). (Doc. No. 7 ¶ 7.) Defendants, who were designated to handle the closing of the Ainamalu Project, "advertise themselves as 'Title Guaranty Hawaii' and that 'Title and Escrow is our Business', and their website further states that TGH handles title services and

[1] The factual background is drawn from Plaintiff's amended complaint (Doc. No. 7), the allegations of which the Court accepts as true for purposes of the pending motion to dismiss. See Kedra v. Schroeter, 876 F.3d 424, 434 (3d Cir. 2017).

TGES handles escrow services." (Id. ¶¶ 8–9.)[2]

Plaintiff alleges that "[o]n or about March 12, 2025, Ho'omalu, LLC and [Plaintiff] entered into a certain agreement wherein [Plaintiff] would provide the sum of $500,000.00, to be held by Defendants, for the claimed purpose of providing a good faith showing of funds to RIC (Waikoloa), LLC c/o Romspen (REOMASTER) Holdings Inc. ("Romspen"), the proposed seller of its LLC member interests in the Ainamalu Project." (Id. ¶ 10.) The terms of the agreement between Plaintiff and Ho'omalu, LLC were set forth in a Promissory Note. (Id. ¶ 11.)[3] Plaintiff and Ho'omalu executed a "Letter of Direction" which was provided to Defendants and which "identif[ied] Defendants as escrow agents for the $500,000.00 to be deposited by [Plaintiff]." (Id. ¶ 12.)[4] As alleged by Plaintiff, "[t]he Letter of Direction specifically provides [Plaintiff's] deposit 'is for the sole purposes of being used as Good Faith Money. Theses funds are not to be used by Client (Ho'omalu) as anything other than evidence that Client (Ho'omalu) is committed to closing this acquisition . . .'". (Id. ¶ 13.) Plaintiff asserts that "[t]he Letter of Direction further states that Defendants shall keep the $500,000.00 separate from the Lender's funds and once the Lender's funds are deposited, the $500,000.00 Good Faith money will be released immediately to [Plaintiff], and that if Lender does not perform, the $500,000.00 Good Faith money would be automatically returned to [Plaintiff] on the 30th calendar day from date of deposit." (Id. ¶ 14.)

On March 18, 2025, Plaintiff wired $500,000.00 ("Escrow Funds") to Defendants and

---

[2] Plaintiff attaches a "true and correct copy of the relevant pages from Defendants' website" as Exhibit A to his amended complaint. (Doc. No. 7-1 at 1–4.)

[3] Plaintiff attaches a copy of the Promissory Note as Exhibit B to the amended complaint. (Doc. No. 7-1 at 5–8.)

[4] Plaintiff attaches a copy of the Letter of Direction as Exhibit C to the amended complaint. (Doc. No. 7-1 at 9–11.)

Defendants confirmed receipt of the funds. (Id. ¶ 15.) Plaintiff alleges that "[c]losing did not occur with[in] the 30 days from the date of [Plaintiff] providing Defendants the Escrow Funds." (Id. ¶ 16.) Plaintiff asserts that "[o]n or about May 28, 2025, [he] inquired about the status of the Escrow Funds, and Defendants, through its Escrow Officer, Vice President & Commercial Division Manager Barbara Paulo . . . advised that the Escrow Funds were disbursed 'in a rush' but that she would request the parties to return the Escrow Funds." (Id. ¶ 17.)[5] Plaintiff alleges that "Defendant neither contacted [him] prior to the disbursement of the funds nor secured his permission tor the disbursement." (Id. ¶ 18.) On November 18, 2025, Plaintiff, through counsel, demanded reimbursement of the Escrow Funds. (Id. ¶ 19.)[6] Plaintiff asserts that "[t]o date, Defendants have failed to account for or return the Escrow Funds to [him]." (Id. ¶ 20.)

On February 16, 2026, Plaintiff filed a complaint in this Court (Doc. No. 1) against only Defendant Title Guaranty, asserting claims for (1) breach of fiduciary duty, (2) negligence, and (3) breach of bailment. Defendant Title Guaranty filed a motion to dismiss the complaint (Doc. No. 6), after which Plaintiff filed an amended complaint (Doc. No. 7), adding Defendant TGES as a Defendant and asserting the same three claims (id. at 5–9). The Court issued an Order denying the motion to dismiss as moot given Plaintiff's filing of an amended complaint. (Doc. No. 8.)

On May 22, 2026, Defendants filed a motion to dismiss the amended complaint (Doc. No. 9), followed by a brief in support of the motion (Doc. No. 10) on May 27, 2026. Defendants argue that Plaintiff's amended complaint is subject to dismissal for lack of personal jurisdiction

---

[5] Plaintiff attaches email correspondence reflecting this exchange as Exhibit D to his amended complaint. (Doc. No. 7-1 at 12–13.)

[6] Plaintiff attaches the demand letter to his amended complaint as Exhibit E. (Doc. No. 7-1 at 14–18.)

under Rule 12(b)(2), improper venue under Rule 12(b)(3), failure to state a claim pursuant to Rule 12(b)(6), and failure to join indispensable parties under Rule 12(b)(7). Plaintiff filed a brief in opposition to the motion to dismiss on June 3, 2026. (Doc. No. 11.) The time for filing a reply brief having passed, the motion is fully briefed and ripe for disposition.

## II. LEGAL STANDARDS

Because Defendants' motion challenges the amended complaint pursuant to several sections of Federal Rule of Civil Procedure 12(b), below the Court sets forth the legal standards applicable to the relevant sections of Rule 12(b).

### A. Federal Rule of Civil Procedure 12(b)(2)

Federal Rule of Civil Procedure 12(b)(2) permits a defendant to move to dismiss a complaint for lack of personal jurisdiction over it. See Fed. R. Civ. P. 12(b)(2). Such motions require the Court to accept as true the allegations of the complaint and draw all reasonable inferences in the plaintiff's favor. See Pinker v. Roche Holdings Ltd., 292 F.3d 361, 368 (3d Cir. 2002). However, "Rule 12(b)(2) does not limit the scope of the court's review to the face of the pleadings" and "[c]onsideration of affidavits submitted by the parties is appropriate and, typically, necessary." See In re Chocolate Confectionary Antitrust Litig., 602 F. Supp. 2d 538, 556 (M.D. Pa. 2009) (citations omitted).

This court has described the burdens and procedures applicable to a Rule 12(b)(2) motion as follows:

> Although plaintiffs bear the ultimate burden of proving personal jurisdiction by a preponderance of the evidence, such a showing is unnecessary at the preliminary stages of litigation. Rather, plaintiffs must merely allege sufficient facts to establish a prima facie case of jurisdiction over the person. Once those allegations are contradicted by an opposing affidavit, however, plaintiffs must present similar evidence in support of personal jurisdiction.[] "[A]t no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction . . . . Once the motion is

> made, plaintiff must respond with actual proofs, not mere allegations." When plaintiff responds with affidavits or other evidence in support of its position, however, the court is bound to accept these representations and defer final determination as to the merits of the allegations until a pretrial hearing or the time of trial.

See In re Chocolate Confectionary Antitrust Litig., 602 F. Supp. 2d at 556–57 (internal citations and footnote omitted).

"A federal court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of the state." Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 144–45 (3d Cir. 1992) (quoting Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n, 819 F.3d 434, 436 (3d Cir. 1987)). Pennsylvania's long-arm statute permits the Court to exercise personal jurisdiction "to the fullest extent allowed under the Constitution of the United States." See 42 Pa. C.S.A. § 5322(b). Therefore, in its exercise of personal jurisdiction, this Court is constrained only by the Due Process Clause of the United States Constitution, which requires that a defendant has "certain minimum contacts with [the forum state] such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." See O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 316–17 (3d Cir. 2007) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). Requiring "minimum contacts" between the defendant and the forum state gives "fair warning" to a defendant that he or she may be called to defend a lawsuit in that state. See Marten v. Godwin, 499 F.3d 290, 296 (3d Cir. 2007) (quotation omitted).

Two forms of personal jurisdiction conform to these notions of due process. General jurisdiction exists when a defendant has such "continuous and systemic" contacts with the forum state that jurisdiction over the defendant is warranted. See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984); Marten, 499 F.3d at 296. Specific jurisdiction

exists when the claims arise out of or relate to activities that the defendant "purposefully directed" at the forum state. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985); Marten, 499 F.3d at 296. To determine whether specific jurisdiction exists, a court must consider: (1) whether the defendant "purposefully directed" activities at the forum state and (2) whether the plaintiff's claims arise out of or relate to these activities. See Marten, 499 F.3d at 296. If these two factors are met, the court must then determine whether exercising personal jurisdiction over the defendant "otherwise 'comport[s] with fair play and substantial justice.'" See id. (alteration in original) (quoting Burger King, 471 U.S. at 476).

**B. Federal Rule of Civil Procedure 12(b)(3)**

Federal Rule of Civil Procedure 12(b)(3) permits a defendant to seek dismissal of a complaint based on improper venue. See Fed. R. Civ. P. 12(b)(3). The purpose of a venue limitation is "to protect the defendant against the risk that a plaintiff will select an unfair or inconvenient place of trial." See Cottman Transmission Sys., Inc. v. Martino, 36 F.3d 291, 294 (3d Cir. 1994) (quoting Leroy v. Great W. United Corp., 443 U.S. 173, 183–84 (1979)). If a court grants a Rule 12(b)(3) motion, it "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." See 28 U.S.C. § 1406(a).

In addressing such a motion, the court "accept[s] as true the allegations in the complaint, unless contradicted by the defendant's affidavits." See Petrick v. Correctional Eyecare Network, Inc., No. 4:12-cv-02252, 2013 WL 12203007, at *3 (M.D. Pa. Aug. 22, 2013) (citations omitted). "While the court may consider facts outside the complaint to determine the proper venue, all reasonable inferences must be drawn in the plaintiff's favor." Id. (citations omitted). In this circuit, the moving party bears the burden of proving that venue is improper. See Myers

v. Am. Dental Ass'n, 695 F.2d 716, 724 (3d Cir. 1982) ("[O]n a motion for dismissal for improper venue under Rule 12 the movant has the burden of proving the affirmative defense asserted by it."); Boston Scientific Corp. v. Cook Group Inc., 269 F. Supp. 3d 229, 235 (D. Del. 2017) (recognizing that "the Court of Appeals for the Third Circuit . . . has expressly held that the moving party has the burden of proving that venue is improper").

**C. Federal Rule of Civil Procedure 12(b)(6)**

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests. See Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief. See Fed. R. Civ. P. 8(a). Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff. See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 312 (3d Cir. 2010). The Court's inquiry is guided by the standards of Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 552 U.S. 662 (2009). Under Twombly and Iqbal, pleading requirements have shifted to a "more heightened form of pleading." See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible." See id. The plausibility standard requires more than a mere possibility that

the defendant is liable for the alleged misconduct. As the Supreme Court instructed in Iqbal, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" See Iqbal, 556 U.S. at 679 (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

Accordingly, to determine the sufficiency of a complaint under Twombly and Iqbal, the United States Court of Appeals for the Third Circuit has identified the following steps a district court must take under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Township, 629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 556 U.S. at 679).

In ruling on a 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

**D. Federal Rule of Civil Procedure 12(b)(7)**

Rule 12(b)(7) permits a defendant to move to dismiss a complaint for failure to join an indispensable party under Federal Rule of Civil Procedure 19. See Fed. R. Civ. P. 12(b)(7). In moving to dismiss under Rule 12(b)(7), a defendant bears the burden to show why an absent party should be joined. See Disabled in Action of Pennsylvania v. Se. Pennsylvania Transp. Auth., 635 F.3d 87, 97 (3d Cir. 2011) (citation omitted). In addressing such a motion, the court accepts the truth of the allegations of the complaint and views them in the light most favorable to

the non-moving party, and may consider evidence outside the pleadings. See Reschenthaler v. Schmidt, 776 F. Supp. 3d 280, 289 (M.D. Pa. 2024) (citations omitted).

The Third Circuit has described the Rule 19 joinder analysis as a three-step process. See Epsilon Energy USA, Inc. v. Chesapeake Appalachia, LLC, 80 F.4th 223, 232 (3d Cir. 2023) (citations omitted). First, the court assesses whether the absent party is a required party under Rule 19. See id.; Fed. R. Civ. P. 19(a)(1)(A), (a)(1)(B). A party is necessary if, in their absence, "the court cannot accord complete relief among existing parties." See Fed. R. Civ. P. 19(a)(1)(A). Alternatively, a party is necessary if that party:

> claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

See Fed. R. Civ. P. 19(a)(1)(B). If a party is necessary within the meaning of Rule 19(a)(1)(A) or (a)(1)(B), the court next addresses whether the party can be joined without depriving the court of the ability to hear the case. See Epsilon Energy USA, Inc., 80 F.4th at 232 (citations omitted). Finally, if it is not feasible to join the party, the court asks whether the action should "continue in the party's absence or be dismissed." See id.; see also Fed. R. Civ. P. 19(b). Whether a party is indispensable, such that the action should not proceed in their absence, depends on four factors:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
> (2) the extent to which any prejudice could be lessened or avoided by:
> (A) protective provisions in the judgment;
> (B) shaping the relief; or
> (C) other measures;
> (3) whether a judgment rendered in the person's absence would be adequate; and
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

See Fed. R. Civ. P. 19(b).

## III. DISCUSSION

The Court first addresses Defendants' Rule 12(b)(2) challenge to personal jurisdiction.

### A. Rule 12(b)(2) Motion to Dismiss

In his amended complaint, Plaintiff alleges that both Defendants are residents of Hawaii (Doc. No. 7 ¶¶ 2–3) and that "[t]his Honorable Court has personal jurisdiction over Defendants as Defendants are majority owned by Fidelity National Financial, Inc., a company with continuous and systematic contacts within Pennsylvania, including operating multiple offices in Pennsylvania" (id. ¶ 5).

In their motion to dismiss, Defendants state that "[n]either TGH nor TGE transacts business in Pennsylvania"; "[n]either TGH nor TGE has offices or locations in Pennsylvania"; and "[n]either Defendants has 'minimum contacts' in Pennsylvania such that personal jurisdiction over Defendants in Pennsylvania may be obtained." (Doc. No. 9 ¶¶ 18–20.) In their brief in support of their motion, Defendants similarly argue that "neither Defendant transacts business in Pennsylvania, has any offices or locations in Pennsylvania, and/or owns any real estate in Pennsylvania" and that "Plaintiff cites not one iota of evidence within the Amended Complaint to indicate that any Defendant, directly or indirectly, reached out to Plaintiff to solicit the escrow services that Plaintiff claims Defendant(s) was/were obligated to provide, which, if the Amended Complaint is credulous, were performed in Hawaii." (Doc. No. 10 at 6.)

In his brief in opposition to Defendants' motion to dismiss, Plaintiff responds, as to Defendants' jurisdictional arguments, that "[a]s a matter of public record, in June 2017, Fidelity National Financial, Inc. acquired a majority ownership stake in Title Guaranty of Hawaii, named Defendant in this matter. As stated in the press release attached hereto and made a part hereof as Exhibit "1", the acquisition integrated Defendant into Fidelity's national title company family . .

. .” (Doc. No. 11 at 17.) Plaintiff further states that “as Defendant is owned by Fidelity National Financial, Inc., a company with ‘continuous and systematic’ contacts within Pennsylvania, including operating multiple offices in Pennsylvania, jurisdiction is proper in this court.” (Id.) The press release attached to Plaintiff’s brief (Doc. No. 11 at 22–24), is dated June 26, 2017, and states “Fidelity National Financial, Inc. today announced that it has signed a definitive agreement to acquire a majority ownership stake in Title Guaranty of Hawaii” and that Title Guaranty “formally becomes part of the FNK title company family” (id. at 22).

At the outset, the Court notes that, given the jurisdictional allegations of Plaintiff’s amended complaint that “Defendants are majority owned by Fidelity National Financial, Inc., a company with continuous and systematic contacts within Pennsylvania, including operating multiple offices in Pennsylvania” (Doc. No. 7 ¶ 5), it appears clear that Plaintiff relies on a theory of general—as opposed to specific—jurisdiction to establish personal jurisdiction over Defendants. Accordingly, Defendants’ argument that “Plaintiff cites not one iota of evidence within the Amended Complaint to indicate that any Defendant, directly or indirectly, reached out to Plaintiff to solicit the escrow services that Plaintiff claims Defendant(s) was/were obligated to provide” is inapposite, as such an argument appears directed at a theory of specific jurisdiction. Therefore, Defendants’ challenge to Plaintiff’s assertion of general jurisdiction is based solely on their argument that “neither Defendant transacts business in Pennsylvania, has any offices or locations in Pennsylvania, and/or owns any real estate in Pennsylvania.” (Doc. No. 10 at 6.)

Upon consideration of the amended complaint, the parties’ submissions, and relevant authority, the Court finds that Defendants fail to meet their burden to challenge personal jurisdiction and will accordingly deny their Rule 12(b)(2) motion to dismiss at this juncture. As stated supra, in connection with a Rule 12(b)(2) motion to dismiss, the Court is obliged to accept

the allegations of Plaintiff's amended complaint as true and construe all inferences in favor of Plaintiff. See Pinker, 292 F.3d at 368. In his amended complaint, and as to the issue of personal jurisdiction, Plaintiff alleges that "Defendants are majority owned by Fidelity National Financial, Inc. a company with continuous and systematic contacts within Pennsylvania, including operating multiple offices in Pennsylvania." (Doc. No. 7 ¶ 5.) Accordingly, the Court is obliged to accept this allegation as true and construe all inferences in favor of Plaintiff in the absence of a moving party's affidavit to the contrary. See In re Chocolate Confectionary Antitrust Litig., 602 F. Supp. at 556 n.13 (stating that "[i]f the moving party fails to submit evidence contravening the allegations of the complaint, the court is bound to accept plaintiff's allegations regardless of whether plaintiff presents further evidence in support thereof"). In challenging this Court's personal jurisdiction over Defendants, Defendants rely solely on counsel's argument presented in their motion and supporting brief that neither Defendant conducts business nor has any offices in the Commonwealth of Pennsylvania. See (Doc. No. 9 ¶¶ 18–20; Doc. No. 10 at 6). Defendants did not submit an affidavit or other evidence providing the Court with information contradicting Plaintiff's jurisdictional allegations. Had Defendants done so, Plaintiff would have been obliged to counter their challenge with his own affidavits or competent evidence. See In re Chocolate Confectionary Antitrust Litig., 602 F. Supp. 2d at 556–57 (citing Patterson v. F.B.I., 893 F.2d 595, 603–04 (3d Cir. 1990) ("[A]t no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction . . . . Once the motion is made, plaintiff must respond with actual proofs, not mere allegations")). Because Defendants did not support their Rule 12(b)(2) challenge with anything other than argument from counsel, the Court finds that Defendants have failed to meet their Rule 12(b)(2) burden and will accordingly deny their motion to dismiss Plaintiff's amended complaint

on this basis.[7]

**B. Rule 12(b)(3) Motion to Dismiss**

In his amended complaint, Plaintiff alleges, as to venue, that "[v]enue is proper in [this district] pursuant to 28 U.S.C. § 1391(b) in that (1) Defendants are subject to personal jurisdiction in Pennsylvania; (2) Plaintiff resides in this judicial district and the Commonwealth of Pennsylvania and (3) a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this judicial district." (Doc. No. 7 ¶ 6.)

In arguing for dismissal because of improper venue pursuant to Rule 12(b)(3), Defendants rely entirely on their arguments in support of lack of personal jurisdiction. See (Doc. No. 10 at 7 (arguing that "for all the reasons set forth in subsection (C) above, which are incorporated by reference, venue in this Honorable Court is inappropriate in the instant case")). They also state that "[i]n addition, potential witnesses from Romspen and Ho'omalu whom Defendant would need to appear in and assist in the defense of the instant case, seem to be located in Canada and Hawaii, respectively" and therefore, "if venue is maintained in this Honorable Court, Defendants, as well as Defendants' witnesses, would suffer extreme harm and prejudice in mounting a defense of the instant case." (Doc. No. 10 at 7.) Defendants seek

---

[7] Although the ultimate jurisdictional issue is not before the Court due to Defendants' failure to sufficiently challenge Plaintiff's jurisdictional allegations, the Court notes that Plaintiff's theory of personal jurisdiction over Defendants appears to rely entirely on the premise that this Court possesses personal jurisdiction over Fidelity National Financial, Inc. as majority owner of Defendants Title Guaranty and TGES. See (Doc. No. 7 ¶ 5). However, any theory of "alter ego" jurisdiction, whereby a court may possess general jurisdiction over a company if it possesses jurisdiction over a parent company "and the two companies operate de facto as a single, organic entity"—depends on a multi-factor assessment supporting a conclusion that the parent company "exercises actual control over a subsidiary beyond that which is characteristic of a usual parent-subsidiary relationship." See In re Chocolate Confectionary Antitrust Litig., 602 F. Supp. 2d at 569–70 (citations omitted). Contrary to Plaintiff's assumption, it is by no means certain that personal jurisdiction over a parent company equates to personal jurisdiction over a subsidiary company.

dismissal of the amended complaint with prejudice for improper venue. (Id.)

In opposing Defendants' motion in this regard, Plaintiff maintains that because "personal jurisdiction is appropriate in the Middle District of Pennsylvania" venue in this Court is "likewise proper" pursuant to 28 U.S.C. § 1391. (Doc. No. 11 at 18.) Plaintiff also responds to Defendants' argument regarding the convenience of the parties and witnesses, and maintains that his choice of forum, Pennsylvania, "should not be disturbed as the convenience factors do not weigh strongly in the Defendant's favor" because "[w]hile Defendant sets forth it will be inconvenienced if the matter proceeds in the Middle District of Pennsylvania as their witnesses will need to travel from Hawaii and Canada, the same is said for Plaintiff, who resides in the Middle District of Pennsylvania, and Plaintiff's other witnesses, i.e., Rose River Consulting, who communicated with Defendant on Plaintiff's behalf, reside in Virginia." (Id. at 19–20.) Plaintiff also asserts that "[g]iven [that] Defendant is owned by Fidelity National Financial, Inc., who has multiple offices in Pennsylvania, and its attorney of record is in-house counsel for Fidelity National Financial, Inc., located in Pennsylvania, venue should remain with this Court." (Id. at 20.)

Upon consideration of the amended complaint, the parties' submissions, and relevant authority, the Court concludes that Defendants fail to meet their burden to prove that venue is improper and will accordingly deny their Rule 12(b)(3) motion. As noted, Defendants rely on their arguments in support of their 12(b)(2) motion for lack of personal jurisdiction in support of their 12(b)(3) motion, and just as Defendants fail to meet their burden in connection with their Rule 12(b)(2) motion, they fail to meet their burden to demonstrate improper venue. As stated supra, the moving party bears the burden of proving that venue is improper, see Myers, 695 F.2d at 724, and Defendants did not submit an affidavit or other evidence challenging the

jurisdictional and venue allegations of Plaintiff's amended complaint, which the Court must accept as true for purposes of a 12(b)(3) motion, see Petrick, 2013 WL 12203007, at *3 (noting that the court "accept[s] as true the allegations in the complaint, unless contradicted by the defendant's affidavits"). Accordingly, the Court will deny Defendants' motion to dismiss Plaintiff's amended complaint on Rule 12(b)(3) grounds.

**C. Rule 12(b)(6) Motion to Dismiss**

Defendants also argue that Plaintiff's three claims—breach of fiduciary duty, negligence, and breach of bailment—are subject to dismissal for failure to state a claim upon which relief may be granted. The Court addresses each claim in turn.

**1. Breach of Fiduciary Duty (Count I)**

In order to state a claim for breach of fiduciary duty under Pennsylvania law,[8] a plaintiff must allege "the existence of a fiduciary relationship between [the parties], that [one party] negligently or intentionally failed to act in good faith and solely for [the other party's] benefit, and that [the complaining party] suffered an injury caused by [the other party's] breach of his fiduciary duty." See Snyder v. Crusader Servicing Corp., 231 A.3d 20, 31 (Pa. Super. Ct. 2020) (citations omitted). The existence of a fiduciary relationship is "necessarily fact specific" but "usually involve[s] some special vulnerability in one person that creates a unique opportunity for another person to take advantage to their benefit." See Yenchi v. Ameriprise Financial, Inc., 161 A.3d 811, 821 (Pa. 2017). Fiduciary duties:

> do not arise "merely because one party relies on and pays for the specialized skill of the other party." If this were the law in Pennsylvania, "a fiduciary relationship could arise whenever one party had any marginal greater level of skill and expertise in a particular area than another party." The superior knowledge or expertise of a party does not impose a fiduciary duty on that party or otherwise convert an arm's-

[8] The parties assume that Pennsylvania law applies to Plaintiff's claims, see (Doc. Nos. 10 at 2–7; 11 at 7–20); accordingly, the Court does so as well.

length transaction into a confidential relationship.

See id. at 822–23 (internal citations omitted).

Defendants argue that "neither Defendant was party to any escrow agreement or similar agreement with Plaintiff for the Down Money, and Plaintiff does not allege otherwise." (Doc. No. 10 at 3.) Defendants further argue that "the only purported indicia of any contact at all between Plaintiff and any Defendant regarding the deposit of the Down Money is the unilateral Letter of Direction that was not countersigned by Defendant Title Guaranty" and maintain that, because there is no escrow agency relationship between the parties, there is no fiduciary relationship between them and therefore this claim is subject to dismissal. (Id.)

In response, Plaintiff argues that the amended complaint plausibly alleges the elements of a fiduciary relationship and its breach because it alleges that Defendant[9] was the escrow agent for the Escrow Funds deposited by Plaintiff, and Defendant[10] subsequently "harmed [Plaintiff] by disbursing the Escrow Funds, despite Defendant[11] not contacting [Plaintiff] prior to the disbursement of the funds nor securing his permission for the disbursement." (Doc. No. 11 at 8.) Plaintiff maintains that the amended complaint alleges a fiduciary relationship by way of its allegation that "Defendant's representative Barbara Paulo confirmed receipt of the Escrow Funds and subsequently that the Escrow Funds were disbursed 'in a rush' but that she would request the parties return the Escrow Funds." (Id.)

Upon consideration of the amended complaint, the parties' briefs, and relevant authority,

---

[9] In connection with his arguments, Plaintiff consistently refers to "Defendant" in his briefing—as opposed to "Defendants"—as if there is only one, not two, Defendants.

[10] See footnote 11.

[11] See footnote 11.

the Court will grant Defendants' motion to dismiss Plaintiff's breach of a fiduciary duty claim. The amended complaint simply fails to allege facts plausibly establishing a fiduciary relationship between Plaintiff and Defendants. As stated supra, "[t]he superior knowledge or expertise of a party does not impose a fiduciary duty on that party or otherwise convert an arm's length transaction into a confidential relationship." See Yenchi, 161 A.3d at 823. Plaintiff cites no authority in support of his position that the facts that he relies on in support of this claim (i.e., that "Barbara Paulo confirmed receipt of the Escrow Funds and subsequently that the Escrow Funds were disbursed 'in a rush' but that she would request the parties return the Escrow Funds") plausibly establish a fiduciary relationship. In the absence of such authority, the Court views the amended complaint as alleging nothing more than the breach of an arm's length transaction. Accordingly, the Court will grant Defendants' motion to dismiss Plaintiff's claim for breach of fiduciary duty (Count I). The Court turns to Plaintiff's negligence claim.

### 2. Negligence (Count II)

Under Pennsylvania law, negligence consists of "the absence of ordinary care that a reasonably prudent person would exercise in the same or similar circumstances." See Walters v. UPMC Presbyterian Shadyside, 187 A.3d 214, 221 (Pa. 2018) (citing Martin v. Evans, 711 A.2d 458, 462 (Pa. 1998)). "To establish a prima facie case of negligence, a plaintiff must plead that 'the defendant owed a duty of care to the plaintiff, the defendant breached that duty, the breach resulted in injury to the plaintiff, and the plaintiff suffered an actual loss or damage.'" Walters, 187 A.3d at 221 (quoting Martin, 711 A.2d at 461).

Defendants argue that Plaintiff fails to plausibly allege a negligence claim against them because "there is no actual agreement between the parties out of which any specific legal duty as between Plaintiff and any Defendant would arise, and indeed, Pennsylvania law holds that any

agreement involving conveyances of real estate such as in the instant case must be in writing and signed by the party sought to be charged under the agreement." (Doc. No. 10 at 3.)

In response, Plaintiff argues that the amended complaint plausibly alleges each element of a negligence claim. Plaintiff states that it "alleges that Defendant, pursuant to the Letter of Direction, was escrow agent for the $500,000.00 ("Escrow Funds") deposited by [Plaintiff] and Defendant owed a duty to Plaintiff to conduct its operations consistent with the standard of care in the title company industry and to safeguard the funds entrusted to its care" and that "Defendant accepted the Letter of Direction and the Escrow Funds from [Plaintiff], that Defendant breached its duty to safeguard the Escrow Funds that were deposited with Defendant, that Defendant breached its duty by disbursing the Escrow Funds without contacting [Plaintiff] prior to the disbursement of the funds nor securing his permission for the disbursement, and that [Plaintiff] has been damaged by the loss of the Escrow Funds." (Doc. No. 11 at 9–10.) Plaintiff takes issue with Defendants' characterization of his claim as one involving a conveyance of real estate requiring a written agreement signed by the party sought to be charged under the agreement, arguing that "[t]his was not an agreement of sale of real estate but an apparent purchase by Ho'omalu of Romspen's LLC member interests." (Id. at 10.)

Upon consideration of the amended complaint, the parties' briefs, and relevant authority, the Court is unpersuaded by Defendants' arguments in favor of dismissal of Plaintiff's negligence claim. As an initial matter, the Court finds unavailing Defendants' argument in favor of dismissal of this claim that there is no "actual agreement between the parties out of which any specific legal duty as between Plaintiff and any Defendant would arise" (Doc. No. 10 at 3), because an agreement between the parties is not necessary to give rise to the potential existence of a duty recognized by law. See Bilt-Rite Contractors, Inc. v. The Architectural Studio, 866

A.2d 270, 282 (Pa. 2005) (stating that "a tort duty can arise absent privity of contract" depending on the circumstances). The Court is similarly unpersuaded by Defendants' argument that the amended complaint fails to plausibly allege a negligence claim because "an agreement involving conveyance of real estate such as in the instant case must be in writing and signed by the party sought to be charged under the agreement." (Doc. No. 10 at 3 (citing In re Evans, 397 B.R. 744, 748 (Bkrtcy. W.D. Pa. 2008), rev'd on other grounds sub nom. Deutshce Bank Nat'l Trust Co. v. Evans, 421 B.R. 193 (W.D. Pa. 2009)).) As noted by Plaintiff in opposition to Defendants' motion, the amended complaint alleges that Plaintiff's provision of funds occurred in connection with Romspen's sale "of its LLC member interests in the Ainamalu Project." (Doc. No. 7 ¶ 10.) The Court will deny Defendants' motion to dismiss Plaintiff's negligence claim (Count II) and turns to Defendants' challenge to Plaintiff's breach of bailment claim.

**3. Breach of Bailment (Count III)**

Pennsylvania law defines a bailment as "a delivery of personalty for the accomplishment of some purpose upon a contract, express or implied, that after the purpose has been fulfilled, it shall be redelivered to the person who delivered it, otherwise dealt with according to his directions or kept until he reclaims it." See Smalich v. Westfall, 269 A.2d 476, 480 (Pa. Super. Ct. 1970).

Defendants argue that Plaintiff's claim for breach of bailment is subject to dismissal because "there is no contract for escrow services, express or implied between Plaintiff and any Defendant" and therefore, "there is no basis for any claim of bailment against Defendants." (Doc. No. 10 at 4.)

In response, Plaintiff argues that the amended complaint alleges a contract implied in fact between Plaintiff and Defendants, maintaining that "a contract implied in fact can be found by

looking to the surrounding facts of the parties' dealings, and offer and acceptance need not be identifiable and the moment of formation need not be pinpointed." (Doc. No. 11 at 11.) Plaintiff identifies the following alleged facts supporting a contract implied in fact and a claim for breach of bailment: "[Plaintiff] delivered to Defendant the Escrow Funds, which were accepted by Defendants, and Defendant was directed, per the Letter of Direction, 'to keep the $500,000.00 separate from the Lender's funds and once the Lender's funds are deposited, the $500,000.00 Good Faith money will be released immediately to [Plaintiff], and that if Lender does not perform, the $500,000.00 Good Faith money would be automatically returned to [Plaintiff] on the 30th calendar day from date of deposit"; however, Defendants "subsequently disbursed [the Good Faith money] without [Plaintiff's] knowledge or consent." (Doc. No. 11 at 11–12.) Accordingly, Plaintiff asserts that his amended complaint plausibly alleges a claim for breach of bailment.

Upon consideration of Plaintiff's amended complaint, the parties' briefs, and relevant authority, the Court is unpersuaded by Defendants' argument in favor of dismissal of Plaintiff's breach of bailment claim. Plaintiff correctly notes that under Pennsylvania law:

> A contract implied in fact can be found by looking to the surrounding facts of the parties' dealings. Offer and acceptance need not be identifiable and the moment of formation need not be pinpointed. Implied contracts . . . arise under circumstances which, according to the ordinary course of dealing and the common understanding of men, show a mutual intention to contract.

See Lobar, Inc. v. Lycoming Masonry, Inc., 876 A.2d 997, 1001 (Pa. Super. Ct. 2005) (quoting Ingrassia Const. Co. Inc. v. Walsh, 486 A.2d 478, 483 (Pa. Super. Ct. 1994)). The amended complaint alleges that Plaintiff wired money to Defendants pursuant to a Letter of Direction stating that "Defendants shall keep the $500,000.00 separate from the Lender's funds and once the Lender's funds are deposited, the $500,000.00 Good Faith money will be released

immediately to [Plaintiff], and that if Lender does not perform, the $500,000.00 Good Faith money would be automatically returned to [Plaintiff] on the 30th calendar day from date of deposit" and that Defendants confirmed receipt of the money on March 18, 2025 but that, after the closing did not occur within 30 days from the date Plaintiff wired the funds, Defendants failed to return the $500,000.00 to Plaintiff. (Doc. No. 7 ¶¶ 14–17.) The Court concludes that Plaintiff's amended complaint plausibly alleges a contract implied in fact sufficient to support a claim for breach of bailment against Defendants under Pennsylvania law, and accordingly, will deny Defendants' motion to dismiss this claim (Count III). The Court turns to Defendants' request for dismissal of Plaintiff's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(7).

**D. Rule 12(b)(7) Motion to Dismiss**

As stated more fully supra, the Court engages in a three-step process to assess a party's 12(b)(7) motion arguing that an absent party is indispensable under Rule 19. The Court first addresses whether a party is necessary either because "the court cannot afford complete relief among existing parties" or a party "claims an interest relating to the subject of the action and is so situated that disposing of the action in that person's absence may" either (1) impair or impede the person's ability to protect the interest as a practical matter or (2) create a "substantial risk" that an existing party may incur double or otherwise inconsistent obligations because of the interest. See Fed. R. Civ. P. 19(a)(1)(A), (a)(1)(B). The Court secondarily addresses whether a party found to be "necessary" under Rule 19 can be joined without depriving the court of the ability to hear the case. See Epsilon Energy USA, Inc., 80 F.4th at 232 (citations omitted). Finally, if the Court determines that it is not feasible to join a necessary party, it must determine whether that party is indispensable such that the action should be dismissed rather than proceed

in their absence. See id.; see also Fed. R. Civ. P. 19(b).

Defendants argue that their Rule 12(b)(7) motion to dismiss should be granted because neither Romspen, Ho'omalu nor Anderson have been joined as parties in this case, precluding complete relief. (Doc. No. 10 at 5.) They argue that "despite Plaintiff alleging in the Amended Complaint that the Down Money was ultimately and wrongfully received by seller Romspen (thus presumably making Romspen the entity currently in possession of the Down Money), Romspen is not named as a defendant" and "[t]his leaves open the possibility for this Honorable Court to render a decision which would not effectuate the return of the Down Money from Romspen to Plaintiff." (Id.) Further, Defendants argue that "despite Plaintiff alleging that Ho'omalu and/or Anderson was/were a part(ies) to the Letter of Direction (the only document claimed to form the basis of any obligations of any Defendant to Plaintiff), Ho'omalu and/or Anderson is/are not named as a defendant(s) in the Amended Complaint." (Id.)

In response, Plaintiff notes that his amended complaint alleges that he "paid the Escrow Funds to Defendant,[12] and Defendant[13] subsequently paid those funds to a 3rd party without [Plaintiff's] knowledge or permission." (Doc. No. 11 at 14.) Plaintiff maintains that the only direct knowledge he has regarding payment of the Escrow Funds comes from Defendants' email correspondence regarding disbursement of the funds, attached to his complaint as Exhibit D. (Id.) Plaintiff maintains that his "position as set forth in [the amended complaint] is the claim is between himself and Defendant,[14] and should Defendant[15] wish to raise subsequent claims

---

[12] See footnote 11.

[13] See footnote 11.

[14] See footnote 11.

[15] See footnote 11.

against any other party to attempt to recover the funds that Defendant[16] wrongfully disbursed, that could properly be done in a separate action"; accordingly, Plaintiff maintains that Defendants' motion should be denied. (Id.) Plaintiff also states that, alternatively, "if the Court deems Romspen, Anderson and/or Ho'omalu to be a necessary party to the instant action, their joinder would not destroy the Court's jurisdiction and thus they could be joined without the necessity of dismissal of the [amended complaint]." (Id.)

Upon consideration of Plaintiffs' amended complaint, the parties' briefs, and relevant authority, the Court finds that Defendants fail to meet their burden to demonstrate that an absent party should be joined and will accordingly deny Defendants' motion in this regard. Defendants rely solely on their argument that Romspen, Ho'omalu or Anderson are "necessary" parties within the meaning of Rule 19(a)(1)(A) in support of their Rule 12(b)(7) motion. See (Doc. Nos. 9 ¶¶ 12–15; 10 at 4–5). Plaintiff's amended complaint alleges that, after accepting $500,000.00 from Plaintiff under certain terms, Defendants failed to return the money to him in accordance with those terms. (Doc. No. 7 ¶¶ 10–18.) If the Court determines that Defendants breached a legal obligation to Plaintiff in connection with their handling of the $500,000.00, this Court may direct Defendants to return the $500,000.00 sum to Plaintiff, thereby affording "complete relief among existing parties" in accordance with the legal claims raised in the amended complaint. See Fed. R. Civ. P. 19(a)(1)(A). Contrary to Defendants' position, the Third Circuit has held that "[c]ompleteness is determined on the basis of those persons who are already parties, and not as between a party and the absent person whose joinder is sought." See Angst v. Royal Maccabees Life Ins. Co., 77 F.3d 701, 705 (3d Cir. 1996). The resolution of claims asserted by Plaintiff

---

[16] See footnote 11.

against Defendants will effectively resolve the controversy between them, despite the absence of any other party. See, e.g., Incubadora Mexicana, SA de CV v. Zoetis, Inc., 310 F.R.D. 166, 171 (E.D. Pa. 2015) (stating that "this action will determine whether Defendants are liable to Plaintiffs for Plaintiffs' loss" because "[i]f Defendants are found liable, Plaintiffs will be made whole" and "[i]f Defendants are found not liable, Plaintiffs will have resolved their controversy with Defendants" and "[t]he fact that Plaintiffs have elected not to bring a separate cause of action against the Mexican entities here—and therefore could not obtain relief from the Mexican entities in this litigation should the facts show that they, and not Defendants, are liable for Plaintiffs' injuries—does not make the Mexican entities necessary parties"). Because Defendants have failed to meet their burden to demonstrate that any absent party is "necessary" under Rule 19(a)(1)(A), the Court's analysis need not proceed further. See Pittsburgh Logistics Systems, Inc. v. C.R. England, Inc., 669 F. Supp. 2d 613, 617 (W.D. Pa. 2009) (stating that "[i]f a party is not found to be necessary the court's analysis stops at that point because a party cannot be 'indispensable' if it is not 'necessary'") (citing Janney Montgomery Scott, Inc. v. Shepard Niles, Inc., 11 F.3d 399, 405 (3d Cir. 1993)). The Court will deny Defendants' motion to dismiss on Rule 12(b)(7) grounds.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part Defendants' motion to dismiss Plaintiff's amended complaint. An appropriate Order follows.

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania